FILED

MAR 19 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 Michael A. Bruzzone
2 Clayton Act § 4 Material Witness
Federal Civic Servant under Dept
3 Labor Code, voluntary civic servant
3766 Via Verdi, Richmond, CA 94803
4 Representing Self, Campmkting@aol.com
(415)250-4652
5

**In the UNITED STATES DISTRICT COURT**
6 **for the NORTHERN DISTRICT OF CALIFORNIA**

7                                          ) Case No.:
                                         )
8                                          ) **CV 14 1279**
                                         ) Dept:
9 MICHAEL A. Bruzzone,                     )
                                         ) Judge: Honorable
10        Plaintiff                       )
                                         ) **FEDERAL RELATOR CIVIL COMPLAINT**
11 vs.                                     ) TO RECOVER 200 MONTHS PERSONAL,
                                         ) PROFESSIONAL, TRADE BLACKLIST
                                         ) FINANCIAL HARMS that is CRIME
12 INTEL CORPORATION                       ) RETALIATION MEANT TO OBSTRUCT,
   Ms. Evangelina Almiranterena,          ) PUNISH, SCARE OFF FEDERAL and
13 Mr. Steve Lund,                         ) STATES WITNESSES INTENDED TO
   Dr. Harley Stock,                      ) CONCEAL RACKATEERING, CARTEL
14 Dr. Andrew Grove                        ) OPERATIONS, CRIME INFILTRATION
                                         ) INTO ENTITIES THAT ARE INTEL
15 and                                     ) CORP, ADVANCED RISC MACHINES,
                                         ) MEANT TO DISTRACT THE COURTS
16 Advanced RISC Machines, Inc.            ) FROM ATTORNIES VIOLATING THEIR
   Mr. Ian Drew,                          ) OATH to PROTECT and GUARD THE
17 Ms. Yvonne Carey,                       ) CONSTITUTION OF THE UNITED
   Mr. Eric Shorn,                        ) STATES on their CONCEALMENT of
18 Mr. Simon Segars,                       ) FELONIES COGNIZABLE to COURTS
   Mr. Ehab Youseff                       ) of UNITED STATES in VIOLATION
19                                         ) of 18 U.S.C. 3, 18 U.S.C 4 that
                                         ) is WINTESS TAMPERING SUPPORTING
20        Defendants                      ) CONCEALMENT OF A CRIMINAL FRAUD
                                         ) 18 U.S.C 1512
21                                         )
                                         ) For settlement through Intel
22                                         ) and Advanced RISC Machines
                                         ) internal dispute resolution
23                                         ) committee(s), mediation or
                                         ) trial by jury
24
25 _____

                                                                    1

                    FEDERAL RELATOR CIVIL COMPLAINT

# **TABLE OF CONTENTS**

| | Page |
|---|---|
| TABLE OF AUTHORITIES CASES | 3 - 4 |
| STATUTES | 4 - 6 |
| CONSTITUTIONAL RIGHTS | 6 |
| CALIFORNIA CIVIL CODE | 6 |
| TREATISES | 6 |
| CASE STATEMENT | 6 - 12 |
| STATUTE OF LIMITATIONS | 12 - 15 |
| INTRODUCTION | 16 |
| PARTIES PLANTIFF MICHAEL BRUZZONE | 17 - 20 |
| PARTIES DEFENDANT INTEL CORPORATION | 20 - 24 |
| PARTIES DEFENDANT ADVANCED RISC MACHINES | 24 - 26 |
| STATEMENT OF RELATED CASES | 26 - 29 |
| STATEMENT OF PRIOR ACTIONS | 29 - 30 |
| JURISDICTION and VENUE | 30 - 31 |
| FACTUAL ALLEGATIONS | 31 - 46 |
| CLAIM 1 - Conspiracy to Defraud on Deceit | 47 - 63 |
| CLAIM 2 - Gross Negligence | 63 - 71 |
| RIGHT TO AMEND | 71 |
| PLEA FOR LENIENCY | 71 |
| PRAYER | 72 |

FEDERAL RELATOR CIVIL COMPLAINT

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                **PAGE**

3
*United States v Darden, 70 F.3d 1507, 1525*
4
*(8th Circuit 1995)*................................................................................12

5
*Agency Holding Corp. v. Malley-Duff & Associates,*
6
*Inc., 483 U.S. 143, (U.S. 1987)*........................................................13

7
*Keystone Insurance Company v Houghton 863 F.2d 1125*
*(3d Cir. 1988), abrogated by Kehr v A.O. Smith Corp.,*
8
*521 U.S. 179 (1997)*.............................................................................14

9
*Yates, 334 U.S. at 334, Braverman v United States,*
10
*317 U.S. 49, 53 (1942)*.............................................................................47

11
*GES, Inc. v Corbitt, 17 Nev, 265, 250-71,*
*P.3d 11, 15 (2001)*............................................................................. 50
12

13
*Engalla v. Permanente Medical Group (1997)*
*15 Cal.4th 951, 974 [64 Cal.Rptr.2d 843,*
14
*938 P.2d 903*...........................................................................................57

15
*Service by Medallion, Inc. v. Clorox Co. (1996)*
*44 Cal.App.4th 1807, 1816 [52 Cal.Rptr.2d 650]*.................................57
16

17
*City of Atascadero v. Merrill Lynch, Pierce,*
*Fenner & Smith (1998) 68 Cal.App.4th 445, 482*
18
*[80 Cal.Rptr.2d 329]* ........................................................... 58

19
*Beckwith v. Dahl (2012) 205 Cal.App.4th 1039,*
20
*1061[141 Cal.Rptr.3d 142]* ................................................................59

21
*Thrifty-Tel, Inc., supra*, (1996)
*46 Cal.App.4[th] at p.1567* ...............................................................59
22

23
*Engalla, supra,* 15 Cal.4th at p. 974, quoting
*Yellow Creek Logging Corp. v. Dare (1963)*
24
*216 Cal.App.2d 50, 55 [30 Cal.Rptr. 629]*...........................................60

25
*Engalla, supra,* 15 Cal.4th at pp.976-977........................................60

3

*Guido v. Koopman* (1991) 1 Cal.App.4th 837,
843 [2 Cal.Rptr.2d 437] ......................................................................... 60

*Beckwith, supra,* 205 Cal.App.4th at p. 1062) ........................... 61

*Williams v. Wraxall* (1995)
33 Cal.App.4th 120, 132 {Cal Rotr.2d 658) ............................... 61

*Service by Medallion, Inc., supra*, 44 Cal App.4th
at p. 1818, internal citations omitted ..................................... 61

*Robinson v.Burlington Northern Railroad,*
*Company* 131 f.3d 648, 652 (7th Circuit 1997) ........................... 65

*Rowland v. Christian* (1968) 69 Cal.2d
108, 112 [70 Cal.Rptr. 97, 443 P.2d 561] ............................... 67

*Ladd v. County of San Mateo* (1996) 12 Cal.4th
913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496] ........................ 67

*Ky. Fried Chicken of Cal. v. Superior Court* (1997) 14
Cal.4th 814, 819 [59 Cal.Rptr.2d 756, 927 P.2d 1260] .............. 67

*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771
[122 Cal.Rptr.3d 313, 248 P.3d 1170], internal citations
omitted ........................................................................................... 68

*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th
479, 488, fn. 8 [93 Cal.Rptr.3d 130], internal citation
omitted............................................................................................ 69

*Cabral, supra*, 51 Cal.4th at pp. 772-773,
Original italics, internal citations omitted............................ 70

*Laabs v. Southern California Edison Company*
2009)175 Cal.App.4th 1260, 1273 [Cal.Rptr.3d 241]..... ............. 70

**STATUTES**

Sherman Act § 1. ....................................................................11 & 18

4

Anti Kick Back Act of 1996 ........................................................................11 & 34

15 U.S.C. 15(a)..........................................................................................15 & 30

Clayton Act § 4 ..........................................................................................15 & 30

18 U.S.C. § 245 ....................................................................................................15

Sherman Act § 5 ...............................................................15 & 17 & 19 & 29

28 U.S.C. § 1331 ..............................................................................................30

28 U.S.C. § 1391(b).........................................................................................30

31 U.S.C. § 3732(a)........................................................................................30

18 U.S.C. § 3 .................................................................10 & 13 & 23 & 32

18 U.S.C. § 4 ...............................................................10 & 13 & 32 & 48

18 U.S.C. § 371 .........................................................19 & 32 & 49 & 61

18 U.S.C. § 1503 ..............................................................................................33

18 U.S.C. § 1505 ..............................................................................................33

18 U.S.C. § 1510 ...........................................................................19 & 33 & 62

18 U.S.C. § 1511 ...............................................................................19 & 33

18 U.S.C. § 1512 ................................................................................10 & 33

18 U.S.C. § 1513 ..............................................................................................33

18 U.S.C. § 1341 ..............................................................................................35

18 U.S.C. § 1956 ..............................................................................................35

18 U.S.C. § 1961 ..............................................................................................35

18 U.S.C. § 1962(a)(b)(c)(d)........................................................................35

5

FEDERAL RELATOR CIVIL COMPLAINT

18 U.S.C. § 242 ................................................................................40 & 41

42 U.S.C. § 1983 .............................................................................40 & 63

18 U.S.C. § 1519 .......................................................................................45

42 U.S.C. § 1985 (1)(2)(3) .....................................................................46

42 U.S.C. § 1986 .......................................................................................46

18 U.S.C. § 371 ..........................................................................49 & 50 & 61

18 U.S.C. 1001 .........................................................................................49

18 U.S.C. § 111 ........................................................................................62

**CONSTITUTIONAL RIGHTS**

6th Amendment ............................................................................. 27 & 43

14th Amendment ...........................................................................27 & 43

**CALIFORNIA CIVIL CODE**

Section 1709 ...................................................................................56 & 57

Section 1572 ...........................................................................................57

Section 1714(a)........................................................................................66

**TREATISES**

Tenth Annual Survey of White Collar Crime,
32 AM. Crim. L. Rev. 137, 379-406 (1995) .........................................49

### RELATOR'S CASE STATEMENT

**1.** The claims and allegations of the proceeding paragraphs are incorporated by reference as if fully set forth herein.

6

1   **2.** Mr. Bruzzone here declares and when called as a witness

2   can competently testify, including as Federal Government

3   discovery assistant, and field report, that for 20 years an

4
    organized network crime ring has embedded itself into the
5
6   inter nation microprocessor compute platform's industries

7   demonstrating harms to Mr. Bruzzone on his refusal(s) to

8   participate with organized crime actors as their industrial

9   spy, on which, Mr. Bruzzone reports crime ring operation's

10  and operators to Advanced RISC Machines and Intel

11
    Corporation among others, to United States law enforcement,
12
13  security, intelligence agencies, Congress including in

14  Federal and California State invited technical assistant

15  capacity to investigate that crime ring.

16  **3.** That organized network crime ring is the focus of Mr.

17  Bruzzone's 190 months of Federally invited reporting, on

18
    enterprise crime ring infiltration's that have demonstrated
19
20  themselves harmful to entities that are Intel Corporation,

21  and Advanced RISC Machines Inc, too the nation that is the

22  United States of America, the States of the United States,

23  citizens of the United States, to the sovereign nation's

24  comprising trading partner's of the European Union, and

25

7

FEDERAL RELATOR CIVIL COMPLAINT

1  individual nations who are trading partners including South

2  Korea and Japan.

3  **4.** This civil complaint seeks to recover 200 months of

4

5  professional, personal reputation and financial losses

6  resulting from a sub group of Intel Corporation employees,

7  business relations, and agents, who wrap their defamatory

8  fraud around Mr. Bruzzone, that is retaliatory, meant to

9  punish Mr. Bruzzone, too make an example out of Mr.

10 Bruzzone meant to cause others to shun him, that is a

11 premeditated and malicious act by organized network crime

12

13 actors to conceal themselves in real time committing inter

14 nation economic crime(s), who are so feared by some of this

15 Nation's investigators, that even some judges and members

16 of United States Congress have run in the opposite

17 direction of this crime ring's manipulative influences on

18

19 visibly demonstrated harms to Mr. Bruzzone, that are well

20 known by all such investigators, and all defendants here in

21 mentioned.

22 **5.** Organized network crime fraud is continuous through 200

23 months meant to deter Federal Trade Commission and

24 California Department of Justice investigative fact

25

8

finding's from consideration in the administration of justice affecting Federal, State and civil antitrust actions where Intel Corporation is one of the defendant(s).

**6.** Crime ring strategy is to obstruct administration of justice in Federal, States and civil matters does punish Mr. Bruzzone, a material witness to Intel organized sub group crime, in real time, as such makes Mr. Bruzzone a target that marks him for hunting by mercenaries engaged in the crime, some knowing of their ringmasters conspiratorial frauds, others unknowing of the fraud yet participating in crime acts intended by its ringmaster, and actual agents, to defame Mr. Bruzzone, to strip him financially that has maliciously been meant to scare off other industry, Federal and States witnesses from reporting their related crime knowledge. And does deter Federal and States investigations in total, and does actually obstruct the administration of justice in multiple related case matters.

**7.** For 200 months Mr. Bruzzone is virtually crucified in the public forum, by some Intel Corporation, Ziff Davis, and Advanced RISC Machines employees, and agents, meant to conceal their network crime, racketeering, dependent cartel

9

operations, sub group organized crime infiltration's into the Corporate Entities that are Intel Corporation, Advanced RISC Machines Inc., to distract the Courts of the United States on certain federal agent(s) and some attorneys violating their sacred oath to protect and guard the Constitution of the United States of America given their perpetuation of misrepresentations meant too conceal crime ring felonies known by all of them, including reported to them by Mr. Bruzzone occurring in real time, all of which are cognizable to Intel Corporation and Advanced RISC Machines Executives, Attorneys, judges of the Courts of California and the Courts of the United States, Federal and State agents, before during and after the fact of these crime reports detailing a continuous competition espionage meant to debilitate and steal from its targets economically and financially.

**8.** Where detractors in this conspiracy are in violation of 18 U.S.C. 3, 18 U.S.C 4; on their actual awareness and witness tampering to conceal industry enterprise criminal frauds; 18 U.S.C 1512, determined on inter-nation antitrust findings, California Department of Justice and Federal

10

Trade Commission and reporter's investigative finding's identifying a joint conspiracy to conceal racketeering including tied charge back consumer price fix that is a violation of Sherman Act Section 1, the Anti Kick Back Act of 1986, and economic collusion by model that is RICO in a commercial fraud in violation of security exchange report regulation, quite possibly extending too crime syndicate's violation of the United States economic espionage act of 1996.

**9.** Organized network crime fraud does extreme economic and professional harm to Mr. Bruzzone on the objective of some Intel Corporation employees, and former employees, business relations and agents, many known, intent on concealing organized network crime ring infiltration into Entities that are Intel Corporation, Advanced RISC Machines, others, meant to conceal Sherman and Clayton Act violations, racketeering, witness tampering and multiple forms of financial theft occurring through 19 years, that includes minimally a $26,626,000,000 theft from the Entity that is Intel Corporation itself, theft from the United States Government, and theft from the States of United States, and

FEDERAL RELATOR CIVIL COMPLAINT

1   from United States citizens that is the Intel
2   microprocessor in computer chassis price fix charge that
3
4   does on Intel Corporation false certifications across 19
5   consecutive financial reports to shareholders mask that
6   internal $26.626 billion theft occurring within Intel
7   Corporation itself.

8   **10.** Their fraud is continuous begins 1991, is reported to
9   Intel executives by April 1997, then validates a sub group
10
11  of Intel Corporation employees engaged as ringmaster's in
12  the crime last quarter of 1997, escalating and amplifying
13  ever since with time line of Intel Corporation concealment
14  and retaliation against Mr. Bruzzone by employees, agents,
15  attorneys that is continuous in 1997, 1998, 1999, 2000,
16  2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010,
17  2011, 2012, 2013, 2014. The bell tolls daily for plaintiff
18
19  on defendant and agents continuous retaliatory tampering.

20  ### STATUTE OF LIMITATIONS

21  **11.** Statue of limits in a criminal racketeering case is
22  minimally five years on the defendant committing one
23  predicate act that forms part of the pattern for which is
24  being prosecuted (*United States v Darden,* 70 *F.3d 1507,*
25

12

1525 (8th Circuit 1995). Mr. Bruzzone here declares and when called as a witness could completely testify that predicate acts have occurred within five years and that multiple parties; attorneys, Judges, law enforcement, Federal and States regulators have been informed or know on their own investigations continuous predicate acts that are cognizable by the courts of the United States as a felony crime matter and thus all would violate 18 U.S.C. §§ 3 and 4 to negate the matters felony criminal case status.

12. Equitable tolling in civil RICO case presents minimally a four year limitation *(Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, (U.S. 1987)* that is modeled after the four year limitation of the Clayton Antitrust Act *(see Malley-Duff, 483 U.S. at 151)* including when defendant(s) are engaged in fraudulent concealment, tort for conspiracy including conspiracy to conceal harms, pendency of other court actions, and attacking competitors employees directly to restrain and limit competition.

13. Four year Civil RICO statue of limits is calculated on the predicate rule, for example, where the plaintiff can

13

1  show continuous acts, or two or more similar acts occurring

2  within ten years of each other.

3  **14.** Under 3rd Circuit Court interpretation of 'predicate'

4
5  tolling "the limitations period would start to run from the

6  date the plaintiff knew or should have known that the

7  elements of the civil RICO cause of action existed unless,

8  as a part of the same pattern of racketeering activity,

9  there is further injury to the plaintiff or further

10  predicate acts occurring, in which case accrual period

11
12  shall run from the time when the plaintiff knew or should

13  have known of the last injury or the last predicate act

14  which is part of the same pattern of racketeering activity"

15  [(Keystone Insurance Company v Houghton 863 F.2d 1125 (3d

16  Cir. 1988), abrogated by Kehr v A.O. Smith Corp., 521 U.S.

17  179 (1997}]. Mr. Bruzzone here declares and when called as

18
19  a witness could completely testify that constant injury has

20  occurred through 200 continuous months, that predicate acts

21  of retaliation have occurred within four years, multiple

22  predicate acts that are similar retaliation's directed at

23  Mr. Bruzzone through 16 years, where Mr. Bruzzone is a

24  material witness and direct competitive and employee target

25

14

FEDERAL RELATOR CIVIL COMPLAINT

1  in competition crime matter under Clayton Act § 4 "any

2  person who shall be injured in his business or property by

3  reason of anything forbidden in the antitrust laws . . . to

4
5  bring a treble damages action 15 U.S.C. Section 15(a)", and

6  a discovery technical assistant to Federal Trade Commission

7  Bureau of Competition in Sherman Act Section 5 incipient

8  antitrust investigations of Intel Corporation, since May

9  1998, known as Federal Trade Commission v Intel Dockets

10 9288 and 9341, where Mr. Bruzzone is a protected party in

11
12 government witness capacity and all defendant's have always

13 known these facts of this matter.

14 **15.** That a form of racketeering known as collusion by model

15 has occurred continuously at Intel Corporation, over 16

16 years, where multiple parties including Intel employees,

17 Intel and opposing counsel, observing attorneys, Judges,

18
19 law enforcement, Federal and States regulators have been

20 informed and are knowledgeable of the aforementioned

21 'predicate acts' that are cognizable by the courts of the

22 United States as racketeering, and criminal retaliations

23 targeting Mr. Bruzzone, the United States, the State of the

24 United States and Citizens of the United States.

25

15

1

## INTRODUCTION

2   **16.** This civil complaint addresses the Relator Retaliation
3
4   Claim reporting associated facts in federally protected
5   antitrust case investigations that are Federal Trade
6   Commission v Intel Dockets 9288 and 9341 (18 U.S.C. 245),
7   including falling out of a now tabled False Claims Act
8   matter concerning Intel Corporation, originally filed
9   September 2008 and filed again in the United States
10
11  District Court of Northern California, on August 12, 2013,
12  seeking United States Attorney intervention, yet dismissed
13  by Honorable Judge William Alsup on February 27, 2014,
14  without prejudice to Relator or United States Government,
15  as lacking United States Attorney intervention to proceed
16  on discovery resource necessary by Relator Mr. Bruzzone,
17  and representing attorney Mr. Bauer, too proceed in the
18
19  False Claims recovery matter lacking United States Attorney
20  intervention to lead in negotiation or discovery phase.
21  **17.** There is no such discovery hurdle in this civil aspect
22  of this federal matter on existing civil discovery
23  including from Bruzzone v Intel Santa Clara Superior Court
24  record and on inter nation antitrust findings.
25

16

FEDERAL RELATOR CIVIL COMPLAINT

1

**PARTIES - PLAINTIFF**

2

**18.** Relator Plaintiff, Michael A. Bruzzone, is a resident

3

of California, and a citizen of the United States. In May

4

1998 Mr. Bruzzone became a voluntary federal civic servant

5

on his witness to antitrust and espionage violations

6

occurring domestically in the x86 microprocessor industry.

7

**19.** Induction into federal civic service occurs

8

inadvertently and unexpectedly, May 1998, following a

9

meeting with federal attorneys Messrs. Robert Cook and Jeff

10

Lin, taking place at Federal Trade Commission headquarters

11

in Washington D.C., on topic that is Mr. Bruzzone's direct

12

exposure to competition violations, espionage, retaliations

13

directed at him as a witness to competition violations, and

14

espionage, occurring in the x86 microprocessor and compute

15

technology trades including individuals suspect as

16

industrial spies, with some engaged in racketeering.

17

**20.** On the result of that meeting, an acknowledgement, Mr.

18

Cook of the Federal Trade Commission invites Mr. Bruzzone

19

to provide technical assistance to Mr. Lin, investigating

20

attorney in Intel Corporation Section 5 review, that are

21

Mr. Bruzzone's competition observations at that time

22

23

24

25

17

FEDERAL RELATOR CIVIL COMPLAINT

1  approaching seven year's intermittent on retaliation and
2  punishments, yet committed too legitimate employment within
3  the x86 microprocessor industry, approaching nearly a
4
5  decade of work within related personal computing industry.
6  **21.** Fourth quarter 1998, and by August 1999, Mr. Bruzzone's
7  role had expanded to include industry structure assessment
8  associated with Federal Trade Commission Docket 9288, and
9  channel structure assessment including March 21, 2000
10 letter to work with Mr. Tom Greene, then Senior Assistant
11 Attorney General, by Mr. Richard Frank, then Chief
12
13 Assistant Attorney General, at the State of California, to
14 determine if and how the Intel Inside program represents an
15 antitrust violation.
16 **22.** On initial input by Mr. Greene, on Mr. Bruzzone's
17 industry and Intel Inside program guide awareness, and on
18
19 nascent legal research, Mr. Bruzzone did conclude by March
20 9, 1999 that the Intel Inside program, on its structural
21 mechanic, is a horizontal restraint in violation of Sherman
22 Act Section 1; tied charge back registered metering.
23 **23.** Mr. Bruzzone's expert assessment for Federal and States
24 investigators has always included field investigation, and
25

18

from 1999 entering into the first half of the last decade on Mr. Greene's initial inputs, Mr. Bruzzone continued the investigation in areas of law research, and paralegal composition, and entering last half of the last decade on referral from then Chairman Kovacic of Federal Trade Commission did contribute as technical assistant in the Intel case investigation that is Federal Trade Commission v Intel Corporation Docket 9341, followed American Antitrust Institute publications on competition law and cartel, reengaged an earlier attempt at Intel Corporation production economic analysis and also refined his general system's assessment of Intel Corporation validating engagement in racketeering and dependent cartel operations.

**24.** Today that research assignment on the scientific foundation of multiple academic disciplines comprises 200 months of expert report supporting attorneys employed with the United States Federal Trade Commission Bureau of Competition, engaged in Sherman Act Section 5 incipient antitrust investigations of Intel Corporation known as Dockets 9288 and 9341.

19

1    **25.** Mr. Bruzzone is recognized by United States Attorney
2    Northern California District, in 2008, as Relator original
3    source pertaining to Federal Government notice of Intel
4
5    Corporation anti competitive conduct and compliment media
6    channel industrial espionages, documented October 22, 1996,
7    in case report ID# 196-0, taken by Federal Bureau of
8    Investigation agent, Mr. Jack Felski, at the San Jose
9    Bureau Office on August 8, 1996.  August 8, 1996 meeting
10   for written record of Mr. Bruzzone's observations of crime
11
12   activity occurring in industry follows first contact with
13   the Federal Bureau of Investigation on subject July 15,
14   1996.

15   ## PARTIES – DEFENDANT INTEL CORPORATION

16   **26.** Defendant Intel Corporation is a Delaware Corporation
17   with its principal place of business in Santa Clara,
18
19   California.  Intel designs, develops, manufacturers and
20   markets an extensive line of electronic components used in
21   compute systems including x86 microprocessors, chip sets,
22   graphic controllers, main boards, memories and storage sub
23   systems.  Today Intel Corporation holds an 83% market share
24   in the concentrated oligopoly that is the x86
25

20

FEDERAL RELATOR CIVIL COMPLAINT

1    microprocessor based compute systems product's categories;
2    industrial and commercial embedded, mobile, desktop,
3    workstation, server, multiprocessing and acceleration.
4
5    **27.** Intel Corporation denies anticompetitive and criminal
6    conduct, despite ordered to police its own employees for
7    such by Department of Justice since 1993, and Federal Trade
8    Commission since before 2001.

9    **28.** Intel's antitrust compliance counsel has been Howrey
10   and Simon, certainly in 1998, after which including up
11   through the firms bankruptcy is unknown to Mr. Bruzzone.
12
13   **29.** Mr. Angelena Almiranterena is now Intel Corporation
14   antitrust compliance counsel, since 2004, a former Howrey
15   and Department of Justice employee, who on February 11,
16   2014, is emailed this federal reporter's assessment that
17   Intel Corporation never fully met thirteen Howrey and Simon
18   criteria meeting a 'base' antitrust compliance requirement.
19
20   **30.** First issue of Bruzzone Intel Corporation assessment
21   within the Howrey compliance framework is provided to Intel
22   legal Department including Mr. Chris Moropoulos, in August
23   1998, includes copy to Federal Trade Commission, Department
24   of Justice and States Attorneys General.
25

21

**31.** No improvement from initial assessment which fails all thirteen Howrey and Simon criteria, are ever registered by Mr. Bruzzone, as improved on, in any way that would indicate a passing performance. However current field assessment has determined some improvement, in some mid level employee oversight seeking out potential antitrust compliance failures; whether personnel or system, yet on both criteria still register some errors including Intel negating mid management observation and resolving with this witness pushed under in a commercial criminal fraud.

**32.** Today, there is substantial evidence the enterprise that is Intel Corporation remains infiltrated by individuals engaged in organized network crime who do take over certain oversight, marketing, sales, communications, production planning and other executive positions in support of dependent cartel operation, composed of sub groups of network affiliates that embed themselves into Intel Corporation, x86 compute products compliments, distribution and media channels, today maintain relations inside Advanced RISC Machines, Inc., and others on the matter's investigative history including Cyrix Corporation,

22

FEDERAL RELATOR CIVIL COMPLAINT

1  NexGen Corporation, Advanced Micro Devices Corporation and
2  Integrated Device Technologies Corporation.

3  **33.** That affiliate network is known explicitly and tacitly
4
5  engaged in forms of racketeering and exclusive dealing,
6  competitor restraint, theft including intellectual property
7  theft, punishing resistors who refuse to participate in
8  those crimes and rather report them too law enforcement who
9  include Mr. Bruzzone on citizen's duty; 18 U.S.C. 3.

10 **34.** Formation of the cartel is traced directly to the
11
12 inception of the Intel Inside marketing and sales programs
13 beginning 1991.

14 **35.** Individual Intel Corporation employees and consultants
15 named in this suit include Ms. Evangelina Almiranterena who
16 is the Intel internal antitrust compliance counsel and this
17 Federal Trade Commission reporter's monitor counterpart
18 inside Intel Corporation. Mr. Steve Lund who is the head
19 of the Intel Corporate Security Operation, Dr. Harley Stock
20 a consultant to Intel Corporation who is an affiliate of
21 the United States Secret Service and Federal Bureau of
22 Investigation, Dr. Andrew Grove who initiated a secret
23
24
25

23

corporate and private detective surveillance of Mr. Bruzzone with Dr. Stock beginning in 1997.

**36.** Plaintiff Mr. Bruzzone reserves the right to summon additional current and former Intel employees to provide testimony.

**PARTIES - DEFENDANT ADVANCED RISC MACHINES, Inc,**

**37.** Defendant Advanced RISC Machines Incorporated, is a subsidiary of the holding company Advanced RISC Machines plc with the parent company Advanced RISC Machines Limited located in Cambridge, England.

**38.** The United States operation that is Advanced RISC Machines, Incorporated, is an individual entity incorporated under the laws of Connecticut with its principal places of business located in San Jose, County of Santa Clara, California, and in Austin, Texas.

**39.** Advanced RISC Machines subsidiary operations including Advanced RISC Machines Inc., are engaged in the design development and license of microprocessor intellectual property building blocks, associated hardware and software development tools, supporting licensee customer design and production of microprocessor based compute systems, of all

24

1  sorts, most notably mobile phones, battery powered and low

2  power compute systems.

3  **40.** Individual Advanced RISC employees (ARM) named in this

4
5  suit  are Ms. Yvonne Carey Director of United States Human

6  Resources and Recruiting Services for ARM Inc., Mr. Ian

7  Drew, Executive Vice President of Business Development and

8  Chief Marketing Officer of ARM Holdings Inc., who prior to

9  his employment at ARM beginning July 2008 held the position

10  of General Manager Of Intel Corporation Russia Operations,

11
    and is suspected to retain business relationships within
12
13  Intel Corporation today, Mr. Simon Segars Chief Executive

14  Officer of ARM Holdings plc who is also President of ARM

15  Inc., Mr. Eric Shorn, Vice President Marketing for ARM

16  Inc., and Mr. Ehab Youssef, Vice President Legal for ARM

17  Inc.

18
    **41.** While Advanced RISC Machines is a direct competitor to
19
20  Intel Corporation, that has never stopped some Advanced

21  RISC Machine employee's from pursuing business relations

22  and sales potentials with Intel Corporation. It is also

23  known within the Intel network that to deny the network

24

25

25

1  delivers retaliatory punishments consistent with those
2  types Mr. Bruzzone experiences.

3  **42.** It is known in industry circles that once an Intel
4
5  employee within the Intel circle will always be subjected
6  to Intel network agency. Dare to compete with Intel outside
7  the corporate entity and risk being eliminated on the same
8  tactics of blacklist and retaliation Mr. Bruzzone has
9  attracted, shouldered and recorded, for 21 years, including
10 in federal reporter capacity.
11
12              **STATEMENT OF RELATED CASES**

13 **43.** There are known cases and matters suspect closed under
14 seal.

15 **44.** First, an appeal by Mr. Bruzzone v Intel Corporation
16 standing in 6th District Appellate Court, case H039066,
17 filed 6/13/2013, where Mr. Bruzzone has raised question
18
19 with a Santa Clara Superior Court Judge decision to dismiss
20 case 1-11-CV-213829 on Mr. Bruzzone's ability to state a
21 civil claim for professional and personnel harms which as
22 this complaint suggests is not a forthright determinate.

23 **45.** Second, an appeal by Mr. Bruzzone v Advanced RISC
24 Machines standing in 6th District Appellate Court, case
25

26

FEDERAL RELATOR CIVIL COMPLAINT

1  H039438, filed 3/19/2013, where Mr. Bruzzone has raised

2  question with a Santa Clara Superior Court Judge denial of

3  Mr. Bruzzone's right to due process including questioning

4
5  witnesses presenting a violation of Mr. Bruzzone's 6th and

6  14th amendment right in that civil harassment proceeding.

7  **46.** Third, action in United States District Court Delaware

8  concerning consumer class certification to recover from

9  Intel Corporation for monopoly harms to personal computer

10  end buyers; Phil Paul v Intel civil Case #05-485, filed

11  7/12/2005.

12
13  **47.** Fourth, action in Santa Clara Superior Court concerning

14  consumer class certification to recover from Intel

15  Corporation for monopoly harms to personal computer end

16  buyers; Intel x86 Microprocessor Case 1-05-CV-045077, re-

17  filed 5/4/07.

18
19  **48.** Fifth, Intel Corporation appeal before European Union

20  Court of First Instance, in Brussels Belgium, waiting

21  response, on European Union Competition Commission 2002

22  through 2009 finding Intel Corporation violation of Article

23  82 of the EC Treaty, and Article 54 of European Economic

24  Area Agreement causing commercial harms to competitor(s),

25

27

1   and monopoly harms to personal computer end buyers; Case

2   No. COMP/3/37.990, filed 7/26/2007.

3
**49.** According to 2012 Intel annual financial litigation
4
5   risk "at least 82 separate class action suits have been

6   filed" claiming consumer harms filed in seven District

7   Courts and three State Courts.

8   **50.** On EU Competition Commission finding and this technical

9   assistant's expert assessment for Federal Trade Commission
10
prior to the EU findings those harms are minimally a
11
12  $26,626,000,000 price fix theft determined on false

13  certification in nineteen consecutive Intel Corporation

14  annual financial reports, 1994 through 2012, which register

15  a theft by Intel's own employees engaged in bilateral

16  contact use with channel cohorts, supporting channel kick

17  backs that tie product distribution and media preview
18
channels engaged in exclusive dealing and implementing
19
20  competitor restraints. Restraints include the systematic

21  dismantling of competitive enterprises by Intel media

22  channel's systematically transferring their competitive

23  product's revenue too foremost favored Intel cartel

24  members.  Intel Corporation has also been accused and known
25

28

1  to participate in this practice. Both seem to be forms of
2  economic crimes.

3
4  **51.** Other Fortune 500 corporate plaintiff and private party
5  actions are suspected ongoing, under seal and/or the
6  provision of confidential settlement agreements with Intel
7  Corporation for commercial industrial harm and monopoly
8  harms to computer end buyers.

9  ### STATEMENT OF PRIOR ACTIONS

10  **52.** Intel has been the subject of a United States
11
12  Department of Justice antitrust investigation from 1991
13  through 1993; a Federal Trade Commission Section 5
14  investigation from 1998 through 2001, known as Docket 9288;
15  proximate civil suit by Mr. Bruzzone for defamation and
16  interference with economic advantage 2001 through 2003, and
17  while supposedly settled, did not stop the retaliation Mr.
18
19  Bruzzone experienced, instead enabled and was relied by
20  Intel Corporation to mask an escalation in retaliation into
21  2005/6, including what is thought to be Mr. Bruzzone's
22  close brush with physical assault by a hit squad; a 2007
23  inquiry by Congressman Rush, Chairman of the House
24  Committee on Commerce preceding second Federal Trade
25

29

Commission Section 5 investigation from 2009 through 2010, known as Docket 9341, resulting in consent order, dated on or about October 29, 2010, defining the Intel competition settlement framework to be monitored by the Federal Trade Commission subject to annual review through 2016; and 2010 inquiry by Senator Feinstein aid Mr. Dan Wessell to determine cause for federal government nonintervention in the largest Information Technology procurement theft from the United States in the history of country which is Mr. Bruzzone and Mr. Bauer's now tabled false claims action.

## JURISDICTION and VENUE

**53.** Action arises under Sherman Act §§ 1 & 2, Clayton Act §§ 4 & 15, federal code including civil RICO § 1961, applicable state law and the Constitution of the United States.

**54.** Jurisdiction is conferred upon this court because the case rises under the laws of the United States, 28 U.S.C. § 1331.

**55.** Venue is proper in the United States District Court for any District pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a). Defendant Intel has offices that reside within

30

1  and/or the corporation transacts business within this
2  District.

### FACTUAL ALLEGATIONS

4  **56.** Mr. Bruzzone brings this action against defendant Intel
5
6  Corporation and Advanced RISC Machines, Inc., for fraud and
7  deceit that is conspiratorial by some, on each of the
8  Corporate Entities knowledge and gross negligence to
9  address and remedy organized crime infiltration into Intel
10
Corporation, and Advanced RISC Machines Inc., that targets
11
to immensely damage Mr. Bruzzone, the Entity that is Intel
12
13  Corporation, the Entity that is Advanced RISC Machines Inc
14  and Ltd., the United States of America, the States of the
15  United States and the citizens of the United States, where
16  these claims and allegations are incorporated as if fully
17  set forth herein.
18
**57.** Organized crime infiltration into Intel Corporation has
19
20  always been known by Department of Justice, Federal Trade
21  Commission, Intel executive's Dr. Moore for one, and the
22  Intel legal department, including from Mr. Bruzzone's 211
23  month long notices of escalating antitrust and racketeering
24
25

31

crimes in progress including naming Intel employees and business agents engaged in those acts.

**58.** Includes notice to some Intel employees, business relations, and agents close to those crimes, some participating in those crimes, and covering up those crimes, who do push Mr. Bruzzone under in a 211 month white wash to conceal both knowledge of the racket and their participation in and or to conceal the racket (18 U.S.C. §§ 3, 4), combined in a crime ring conspiracy to defraud Intel Corporation and the United States (18 U.S.C. 371), and the citizens of the United States, and too lay waste to Mr. Bruzzone personally, professionally, financially including while in civic service to the Federal Trade Commission.

**59.** Some Intel Corporation and Advanced RISC Machines employees, business relations and security agents, and sub agents thought to be detectives and their hooligans, some known, do participate together too mark and make a target out of Mr. Bruzzone, by framing him over and over again as suspect larcener, smuggler, intellectual property leak, positioning Mr. Bruzzone as dangerous and a risk, and do make Mr. Bruzzone prey for hunting in a premeditated and

FEDERAL RELATOR CIVIL COMPLAINT

1 | malicious misrepresentation meant to obstruct the
2 | administration of justice, and legitimate law enforcement
3 | investigation of the crime occurring for 15 years, (18
4 | 
5 | U.S.C. §§ 1503, 1505, 1510, 1511) that is witness tampering
6 | (18 U.S.C. §§ 1512, 1513), for 15 years.

7 | **60.** The acts of wrapping frauds around Mr. Bruzzone
8 | positioning him in ways that are still masked, yet known to
9 | falsely position him suspect larcener, smuggler, and those
10 | known that are undesirable character, delusional, paranoid,
11 | insane, as addict on their addiction to harm and extinguish
12 | 
13 | Mr. Bruzzone's life all seem meant to disqualify Mr.
14 | Bruzzone's Federal and States witness status to organized
15 | network crime for which cartel ringmaster's have seemingly
16 | failed.

17 | **61.** Thus Intel Corp, Advanced RISC Machines, United States
18 | Department of Justice, legitimate federal and states law
19 | enforcement must be aware of what felony crimes are
20 | enforcement must be aware of what felony crimes are
21 | committed against Mr. Bruzzone, the United States, and the
22 | States of the United States? Certainly known to include
23 | Intel Corporation violation of Sherman and Clayton Acts,
24 | associated racketeering, culminating in what this analyst
25 |

33

FEDERAL RELATOR CIVIL COMPLAINT

1  suspects is a crime syndicate's violation of the economic

2  espionage act of 1996.

3  **62.** This analyst also suspects Intel Corporation, Advanced

4

5  RISC Machines, others, are aware of misrepresentations

6  parlayed and constructions wrapped around Mr. Bruzzone that

7  would result in such an extended law failure prolonging to

8  conclusion a systematic economic attack against the United

9  States and the American people. When called as a witness

10 Mr. Bruzzone could so competently testify and does here.

11 **63.** These are the horrific acts of an organized crime ring,

12

13 with network ties to Intel Corporation, Advanced RISC

14 Machines and former Ziff Davis Publishing personnel,

15 stockholders, stakeholders, meaning to drive Mr. Bruzzone

16 into financial ruin as their punishment, hung up before

17 industry, judges and Congress, on their meaningful intent

18

19 too scare other witnesses away so enemies of the State

20 could complete their economic crime in progress, over

21 fifteen years, that is competition and economic espionage.

22 **64.** Acts by some cartel ringmasters buried into Intel

23 Corporation are meant to conceal violations of the Sherman

24 and Clayton Acts, the Anti kick back Act of 1986, the same

25

34

FEDERAL RELATOR CIVIL COMPLAINT

false certification that Intel Inside is a legitimate cost of microprocessor sale occurring across nineteen Intel Corporation annual reports; 1994 through 2012; and 2013?

**65.** These Sherman and Clayton Act price fix and other violations conceal racketeering in the late 1990s and early 2000s that is Mail Fraud (18 U.S.C. 1341) associated with microprocessor in product routing across intra State line, and by the mid 2000s laundering that is bribes and kick backs (18 U.S.C. 1956), culminating over the log run in confirmation of enterprise network corruption (18 U.S.C. 1961), that is racketeering in a dependent cartel operation designed to collect unlawful debt, that is the Intel Inside price fix value, from computer end buyers, to reimburse Intel Corporation for cartel channel administrative costs including rebated fee match on computer supplier payments, both paying to media agents [18 U.S.C. 1962(a)(b)(c)(d)] for exclusive dealing, and to maintain a cartel tied sales system.

**66.** Having rebuffed the solicitations of industrial spies between 1991 and 1995, including as an Advanced RISC Machines employee, Mr. Bruzzone reports some of the spies

35

to his employers and with their identities now known, retaliation targeting Mr. Bruzzone escalates into the spring of 1996 following witness of suspect infiltration into Advanced RISC Machines, followed by intellectual property and secure data theft occurring at NexGen Corporation and the acquiring entity Advanced Micro Devices Corporation.

**67.** Mr. Bruzzone reports his crime ring observations to Advanced RISC Machines Operation's manager Ms. Ellen Silver, Advanced RISC Machines CEO Sir Robin Saxby, to Advanced Micro Devices human resource personnel, and Corporate Security Chief Mr. Mark Tyrrell, among others.

**68.** Suspects detailed to Ms. Silver and Sir Robin Saxby includes former Intel employee(s), an Intel corporate recruiter, two others that recruiter described as "the old gizzer's from Intel", two and then multiple publicist's who maintain business relations with Ziff Davis Publishing and some industry analysts.

**69.** Suspects detailed to Mr. Tyrell include former and current Intel employee, one NexGen administrative assistant, Ms. Kim, Advanced Micro Devices employees who

36

1  maintain business relations with the Ziff Davis Publishing
2  Company, even then known to be a foremost member of what is
3  beginning to be described as 'the Intel combination'.
4
5  **70.** Combination a distinction earned on Ziff Davis
6  Publishing sale's representatives leadership, as virtual
7  resource, to sell in the Intel Inside program plan, in 1991
8  and 1992, as direct agent for Intel Marketing Department,
9  to corporations then the world's foremost Computer Design
10 Producers and Intel's foremost domestic customers. In
11 period Ziff Davis Publishing is a horizontal franchise of
12
13 sister publications having common Directorate, known as
14 meizaru kieretsu, which essentially translates 'small
15 cartel'.

16 **71.** At Advanced RISC Machines in 1995, 2012, 2013 and
17 today, Mr. Bruzzone knows as a material witness including
18
19 on the Santa Clara Superior Court Record he is being framed
20 in a conspiratorial fraud. In 1995 some known frame Mr.
21 Bruzzone in secure data breech, today includes Judge
22 Greenwood denying due process and cross examining ARM
23 employees (Santa Clara Superior Court Case 1-12-CH-004644,
24 6th Appellate District Case H039438) about who is framing
25

37

FEDERAL RELATOR CIVIL COMPLAINT

1  Mr. Bruzzone, where Mr. Bruzzone knows on more of the same
2  explicit tactics of their direct attack he is being framed
3  again in real time, now by Advanced RISC Machine employees,
4
5  on the same Intel Corporation defamation that positions Mr.
6  Bruzzone as "dangerous and a risk". ARM employees now
7  spread this defamation to others. Where Mr. Bruzzone is
8  prospecting for consultancy these acts are defamatory,
9  meant to punish, are continuous tactics of network crime
10 ring's continuous trade blacklist of Mr. Bruzzone, since
11 1995, for rebuffing recruitment as an industrial spy, and
12
13 reporting recruiters and other's identities to Federal
14 Bureau of Investigation, Homeland Security, Central
15 Intelligence Agency, Senate Select Intelligence Committee.
16 **72.** At Advanced Micro Devices Mr. Bruzzone suspects he is
17 being framed in intellectual property theft, occurs in a
18 retaliatory environment including harassing voice mails,
19
20 and home break in, and Mr. Bruzzone is dismissed in a lay
21 off in July 1996.
22 **73.** In 1997 Mr. Bruzzone encourages Mr. Tyrrell to
23 investigate, and by 2002, theft of Mr. Bruzzone's
24 confidential work product for Advanced Micro Devices is
25

38

1   produced by Intel Corporation, that is discovery in the

2   first Bruzzone civil action. That production is withheld

3   from Mr. Bruzzone by his own attorney's until time had

4
5   lapsed for supplemental questions and answers, and that

6   case is destroyed by them and suspect handlers not unlike

7   the attempts in Judge Greenwood appeal matter currently.

8   **74.** Meantime Mr. Tyrrell does identify an Intel work

9   relationship with a member of his staff engaged in gray

10  market investigations, with Mr. Leonard Balli of Intel

11  Corporation. Mr. Balli is known for some rare, publicly

12
13  reported, nefarious methods of surveillance set up and is

14  also known as former Intel CEO, Mr. Barrett's, body guard

15  and known to work with Dr. Andrew Grove and Dr. Harley

16  Stock on the Bruzzone surveillance.

17  **75.** On Intel production in the first Bruzzone civil matter

18  Mr. Balli participates in the planning of a 25 month covert

19
20  surveillance of Mr. Bruzzone, with then Chief Executive

21  Officer Dr. Andrew Grove, and Dr. Harley Stock, following

22  Mr. Bruzzone's first report of organized network crime to

23  Intel executives including Dr. Grove, Dr. Barrett, Intel

24

25

39

1  Corporate Counsel Thomas Dunlop, Dr. Harley Stock among
2  others occurring May through October 1997.

3  **76.** Summer 1997 members of the Intel security department,
4
5  Messrs, Small and West among others, and Mr. Moropoulos
6  with Intel legal department present a paid contract
7  opportunity (1997-0808-CMM/100-3501-88/MB effective 8.8.97
8  to 8.22.97) for Mr. Bruzzone to meet with a security
9  consultant working for Dr. Grove, for Mr. Bruzzone to
10 detail observations of antitrust and espionage violations
11
   he had observed in the field.
12

13 **77.** That individual is Dr. Harley Stock, who at that time
14 and until approximately 2007, is a masked affiliate of the
15 United State Secret Service and Federal Bureau of
16 Investigation (18 U.S.C 242) note deprivation of rights
17 under the color of law; who is also Intel Corporation's
18
   paid consultant (42 U.S.C. 1983) "Every person acting under
19
20 color of law who deprives another of their civil rights
21 shall be liable to the injured party."

22 **78.** Dr. Harley Stock misrepresentation of Intel Docket 9288
23 and 9341 case facts, to obstruct, tamper and frame a
24 Federal witness, Mr. Bruzzone, as an undesirable, is
25

40

continuous 1997 through now including last in Santa Clara County recorded attempt, August 2012, suspect continuing currently at Advanced RISC Machines, Inc.

**79.** Mr. Moropoulos positions the meeting as Dr. Stock's examination of Mr. Bruzzone's claims of anticompetitive and other criminal conduct. And Dr. Stock's assessment of Mr. Bruzzone that within two weeks of the meeting is publicly disseminated positioning Mr. Bruzzone as "paranoid delusional", which is a tactic of trade blacklist (18 U.S.C 242) and regardless of whether this was a tactical screen for federal investigation of the crime, in total, it now represents a continuous 15 year conspiracy against Mr. Bruzzone's civil rights, by minimally Dr. Stock and his Intel Corporation client and other cohorts.

**80.** Mr. Bruzzone initially declines the Dr. Stock meeting, rather preferring to confer with an Intel attorney or executive responsible for anti trust compliance or marketing programs oversight on some knowledge of the business and industry environmental condition; "dog eat dog", according to Dr. Moore.

41

**81.** Mr. Bruzzone is optimistic that Intel will remedy crime in enterprise and channels, does decide to meet with Doctor Stock, as the only choice offered, which occurs in an all day meeting on August 27, 1997, in subsequent meeting(s) and court encounters.

**82.** As a result of those interfaces with Dr. Stock, Intel attorneys and others thought to be Intel executives, and known Intel Corporation security personnel including Messrs Hatcher, Small, West, de los Santos, Lund, all are thought to know who frames Mr. Bruzzone, including on their character assassination of August 1997, and character assassination of 2012 and 2013 and other causes of action that continue today, are never ending, statute of limits bell tolls daily for plaintiff.

**83.** Their frame is constant, in every month for 200 months and through the entire calendar year of 2012, resulting in a wave of defamation peaking at Advanced RISC Machines, Incorporated, November 2012, which continues through 2013 as an employment block continuing too make it impossible for Mr. Bruzzone to secure employment through the year, and today, on organized crime's conspiratorial wave of

42

1  defamation still parallel Docket 9341 monitoring including
2  by Mr. Bruzzone for the Federal Trade Commission.

3
4  **84.** Pursuant to June 2012 proposal request by former Chief
5  Executive Officer of Advanced RISC Machine, Mr. Warren
6  East, on November 14, 2012 this respondent attends a
7  meeting at ARM Incorporated facility at 150 Rose Orchard in
8  San Jose concerning why cancellation of the proposal
9  request?

10  **85.** Meeting includes Mr. Ian Drew Executive Vice President
11  Marketing, and Ms. Yvonne Carey Director Human Relations
12  for Advanced RISC Machines, and on Ms. Carey's declarations
13  including sworn testimony in Santa Clara Superior Court Mr.
14  Bruzzone is framed in now typical 'Intel Style' constructed
15  fraud, positioning Mr. Bruzzone on here say "as dangerous
16  and a risk".
17
18  **86.** Ms. Carey's fraudulent positioning results in Mr.
19  Bruzzone being slapped with a restraining order, made
20  public, also now subject of 6th Appellate Court Appeal
21  #H039438, on Superior Court Judge denial of Mr. Bruzzone's
22  6th and 14th amendment right to equal protection and too
23  cross examine Ms. Carey and other Advanced RISC Machines
24
25

43

1  employees in Santa Clara Superior Case #1-12-CH-004644;
2  which appears to Mr. Bruzzone as organized crime business
3  as usual in Intel Town.
4
5  **87.** At Advanced RISC Machine framing of Mr. Bruzzone occurs
6  six days before the resignation of Intel CEO Mr. Paul
7  Otellini, on November 20, 2012, where November 14 is just
8  two days following a presentation by Mr. Bruzzone to the
9  Silicon Valley Round Table Chapter of the National
10  Association of Business Economics, documenting one form of
11  Intel Corporation racketeering known as Collusion by Model,
12  in which Mr. Otellini shows a role. Mr. Drew is a former
13  General Manager of Intel Corporation Russia and perhaps
14  acquainted with Mr. Otellini, and other Intel top
15  executives? Having the right to cross examine Mr. Drew in
16  ARM restraining order case that question can be asked.
17
18  **88.** Additionally, Ms Carey could be asked why she perjured
19  herself a defamation concerning Mr. Bruzzone, in same Santa
20  Clara Superior Court positioning Mr. Bruzzone on the same
21  Intel psychological assessment, that is hearsay, that Ms.
22  Carey is not thought credentialed to provide, nor does
23  Advanced RISC Machines United States Counsel, Mr. Ehab
24
25

44

1  Youssef, believe it to be her words, but that of some third

2  party.  Mr. Bruzzone suspects Dr. Stock.

3
**89.**  Dr. Stock's lead too frame Mr. Bruzzone on the strategy
4
5  of a continuous defamation, is continuous since August 27,

6  1997, includes misrepresentation, attempted destruction,

7  and falsification of evidence supporting federal antitrust

8  and racketeering investigation (18 U.S.C. § 1519), as early

9  as August 1997, and is one of the primary inhibitors that

10  has enabled infiltration and the theft from Entity Intel
11
   Corporation, other enterprises, the United States and
12
13  United States citizens by organized network crime ring.

14  **90.**  That August 27, 1997 meeting with Dr. Stock utilized

15  the lure of a paid Intel Contract as a trap.  This is not

16  the only instance where that tactic has been used as a set

17  up to frame Mr. Bruzzone, including at Intel Corporation
18
   headquarters, in 1995, the Mark Hatcher, John Griego and
19
20  Gordon Moore incident, and in continuing fraud's of an

21  organized crime operation at Advanced RISC Machines Inc.,

22  November 2012, including Mr. Ian Drew and Ms. Yvonne Carey.

23  **91.**  Some Intel and Advanced RISC Machines Personnel

24  operating in network of codependent business agents, for
25

45

211 months, maliciously engage in direct and indirect forms of retaliation targeting Mr. Bruzzone, meaning to destroy him financially, have attempted to disqualify his material witness status to cartel operations, including infiltrated into Intel Corporation, product distribution, media preview and other Intel Corporation agent channels. In doing so defendant employees and agents have molested, interrupted, hindered, conspired to intimidate and deprived a citizen acting in federal civic servant his rights and privileges [42 U.S.C. 1985 (1)(2)(3)].

**92.** Mr. Bruzzone believes Intel Corporation employees are cognizant of Mr. Bruzzone being framed by a sub group of Intel Corporation employees, others, for a very long time. In as much have knowledge, know who the bad actors are, the legitimate actors have the power to prevent others from harming Mr. Bruzzone, the Entity that is Intel Corp, and the Untied States, and the States of the United States, and the people of the United States, and in neglecting to do so have harmed Mr. Bruzzone and all others her mentioned immensely (42 U.S.C. 1986) through their joint concealment.

46

## CLAIM 1 – Conspiracy to Defraud on Deceit

**93.** The claims and allegations of the proceeding paragraphs are incorporated by reference as if fully set forth herein.

**94.** Mr. Bruzzone is substantially harmed by Intel Corporation's malfeasance and misrepresentation, and Advanced RISC Machine employee's spreading fraudulent defamations that are intentional by some, to deter understanding of a crime in progress, among many including legitimate Intel Corporation and Advanced RISC Machines employees, and suspect to include conspirator's involving federal and state law enforcement personnel furthering their false representation's that substantially harm all entities here noted including Mr. Bruzzone. Conspiracy is established because the overt acts are criminal [(*Yates, 334 U.S. at 334, Braverman v United States, 317 U.S. 49, 53 (1942)*)].

**95.** Mr. Bruzzone's concerns, and today's proof of antitrust and racketeering, by some Intel Corporation and Advanced RISC Machines employees, and agents, misrepresenting Mr. Bruzzone's antitrust claims and demeanor too conceal organized crime operation inside Intel Corporation, the

47

1  design compliment and distribution sales channels, among
2  employees, business relations and agents engaged in those
3  crime's is established on Federal Trade Commission
4
5  investigations, and law findings in the courts of United
6  States, European Union and Korea.

7  **96.** Individuals who do maliciously lure Mr. Bruzzone into
8  the August 1997 Intel (Dr. Stock) debriefing, only to use
9  that contract trap for subsequent 200 months to frame him,
10 over and over again, as delusional, insane, incompetent,
11
12 paranoid, which has always been intended retaliation for
13 Mr. Bruzzone rebuffing organized crime solicitation and
14 then for his federal and state's crime reporting, is meant
15 to punish Mr. Bruzzone, to financially destroy him, too
16 silence him, attempting to disqualify his witness status to
17 their crime operations, and too scare off other witnesses
18
19 by hanging Mr. Bruzzone in the pubic forum as an example of
20 what would happen to others who oblige by U.S.C. § 4 on
21 their knowledge of the actual commission of felonies
22 cognizable by the courts of the United States, is
23 established in Bruzzone v Intel civil court proceedings,
24 other domestic and inter nation proceedings including Intel
25

48

Corporation Derivative Litigation, United States District Court Delaware; C.A. No. 1:09-cv-867-JJF, and in Dell Corporation Securities Exchange Commission matter heard in United States District Court Texas; No. A-06-726-SS.

**97.** The Intel defamation that positions Mr. Bruzzone as delusional, insane, incompetent, paranoid, "dangerous and a risk" continues too be spread by Intel Corporation and Advanced RISC Machines employees currently.

**98.** In the federal system there is no indictment or conviction for fraud. Rather, as an English law, the term fraud is a concept at the core of a variety of criminal statutes such as conspiracy to defraud criminalizing a conspiracy by two or more persons to defraud the United States or one of its agencies. The general conspiracy stature 18 U.S.C. 371, creates an offense if two or more persons conspire either to commit any offense against the United States, or any agency thereof in any manner or for the purpose. [See Tenth Annual Survey of White Collar Crime, 32 AM. Crim. L. Rev. 137, 379-406 (1995)].

**99.** The operative language called the "defraud clause", prohibits conspiracies to defraud the United States and

49

1  requires the traditional elements of Section 371 that is
2  conspiracy, including an illegal agreement, criminal intent
3  and proof of the overt acts. To prevail in a civil
4  conspiracy action, a plaintiff must prove agreement between
5  tortfeasors, whether explicit of tacit. (GES, Inc. v
6  Corbitt, 17 Nev, 265, 250-71, P.3d 11, 15 (2001). Where
7  under the federal standard (18 U.S.C. 1001) making false
8  statements; prohibits knowingly and willfully making false
9  or fraudulent statements, or concealing information "in any
10 jurisdiction" of the federal government of the United
11 States, even by mere denial are proofs. Many proofs are
12 apparent and may proofs to deny them confirm criminal acts.
13 **100.** Mr. Bruzzone believed, in August 1997, yet in question
14 today Intel Corporation intent too prevent anti competitive
15 acts, racketeering and espionages by its employees, agents
16 and business relations, given the claims of Intel employees
17 and agents, including attorneys, security personnel and
18 Secret Service Affiliate Dr. Stock, all of whom seemed
19 credible, and earnest before the August 1997 conference
20 with Dr. Stock, but certainly not after that encounter.

**101.** Subsequently, Mr. Bruzzone agreed to paid August 1997 contract assignment by Intel Corporation for meeting with their consultant who is affiliate Secret Service and Federal Bureau of Investigation agent, Dr. Stock, as some nascent consultancy for pursing future projects with Intel Corporation, by reporting his field observations of antitrust, racketeering and espionages witnessed in the field and across the United States.

**102.** Where one prominent proof that is federal evidence, known as the July 1993 'PC Week Cyrix Love on the Rocks proof' is provided by Mr. Bruzzone to Intel attorneys, and Dr. Stock, and subsequently falsified by Dr. Stock as a figment of Mr. Bruzzone's deranged mind for proceeding 200 months and does attempt to conceal and falsify that proof.

**103.** Beginning August 1997 Mr. Bruzzone provides description of the competitive effects of a channel price fixing scheme, to Intel attorneys and Dr. Stock, then termed 'rebated fee' and always known as Intel Inside.

**104.** Mr. Bruzzone provides description of the competitive industry and channel effects of an industrial tying scheme,

51

FEDERAL RELATOR CIVIL COMPLAINT

to Intel attorneys and Dr. Stock, known as Pentium Neptune Motherboard bundle.

**105.** Mr. Bruzzone provides the description of the industrial espionages he witnesses, to Intel attorneys and Dr. Stock, including the names of those involved.

**106.** Rather than address Intel Cartel codependent network crime, Intel Corporation covers up those crimes by wrapping a constructed fraud around Mr. Bruzzone too conceal all crimes, as all crimes escalate and amplify, as Intel Corporation is taken over by organized network crime for the next 200 months, resulting in a $26,626,000,000 theft from Intel Corporation itself, and some proportional sum from Intel customers, which is paid by Intel and customers to Intel product distribution channels and media sales agents operating contractually in dependent cartel operation.

**107.** Where channel tying ringmasters reimburse themselves that Intel theft, to disguise their theft which is an illegal sales commission cost kicked back too media agents, that is a price fix cost incorporated into the purchase price of Intel microprocessors integrated, riding, and

52

1   routed in a personal computer chassis, representing a cost

2   add passed down the sales chain as part of the end buyer

3   computer purchase price itself, costing and causing the

4
5   ultimate end buyer computer price fix theft including from

6   the United States Federal Government and all States

7   Governments, and computer end buyers generally.

8   **108.** Intel misrepresents their contributing role in this

9   commercial fraud, as a legitimate cost of sale, despite

10  kicked back through distribution system as a cost attach

11
12  to Intel microprocessors riding in computer systems, for

13  reimbursement back to cartel for tied charge registered

14  metering of the microprocessor sale, and for exclusive

15  dealing, is a channel administrative cost ultimately paid

16  by all computer end buyers.

17  **109.** To defraud the United States, *crimen falsi,* is also

18
19  established on common law concept on intentional deception

20  of person, or entity, by another for monetary or personal

21  gain. Fraud offenses always include some sort of false

22  statement, misrepresentation, or deceitful conduct. Fraud

23  occurs when an individual or organization makes an untrue

24  representation about an important fact or event, the untrue

25

53

1 presentation is believed by the victim, the victim relies
2 on and the acts on the untrue representation that is a
3 misrepresentation and can also be false certification.
4
5 **110.** In Mr. Bruzzone's case he believes the August 1997
6 meeting with Dr. Stock will result in error correction and
7 antitrust remedies, yet over the 200 months that this fraud
8 is continuously refreshed by Intel agents, including
9 attorneys, and now Advanced RISC Machines employees, Mr.
10 Bruzzone suffers loss of his employment, money and property
11 as result of relying on, acting upon, the nature of Intel
12 Corporation's continuous representation of an interest to
13 correct crime in that enterprise and channels as one would
14 think any legitimate management and governance institution
15
16 would.

17 **111.** Fraud can be for the benefit of an individual, or for
18 the benefit and gain of an organization, entity or program.
19 In this case all four types are the beneficiaries of a
20 crime on misrepresentations made to Mr. Bruzzone, and
21 others, meant too lure in and destroy Mr. Bruzzone;
22 financially, in reputation, professionally, at times
23 emotionally through 200 months of Intel Corporation and
24
25

54

1 agents concealing the racketeering infested enterprise that
2 has always been Intel Corporation.

3 **112.** Intel represented to Mr. Bruzzone that the entity and
4
5 its employees were not engaged in anticompetitive
6 activities, and if so would correct those activities,
7 including as the result of contract assignment to consult
8 on this topic in August 1997. None of this lure was ever
9 true.

10 **113.** Intel Corporation representing corporate concern for
11
12 competitive conduct, addressing Mr. Bruzzone's knowledge of
13 competition and espionage violations occurring in real
14 time, is a hoax, and is false.

15 **114.** Intel employees in positions to error correct on Mr.
16 Bruzzone field observations did not knowing that their
17 representations for concern, for correction, were and are a
18 hoax and are false.
19
20 **115.** Some Intel employees knew the representations made were
21 actually false when they made them.

22 **116.** Others at Intel made the representations recklessly,
23 and without regard for the truth, or were dragged into
24

25

55

them, or believed the hoax on other Intel Corporation employee's false statements and false certifications.

**117.** Other Intel employees may have been afraid for their lives, and livelihood, knowing that the enterprise is substantially infiltrated by organized network crime.

**118.** Mr. Bruzzone was intent to rely on Intel representing a concern and reasonably did so.

**119.** Mr. Bruzzone was harmed on his reliance of one of the foremost Intel lies, concern for competition and organized crime correction, and this misrepresentation by Intel is a substantial factor causing Mr. Bruzzone harms as the crime escalates and the Entity that is Intel Corporation is taken over and stolen from by organized crime through the prior 200 months that is up until recently and thought to continue in some ways currently.

**120** Federal definition parallel California Civil Code section 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

56

**121.** Section 1709 meaning is either: **1)** The suggestion, as a fact, of that which is not true, by one who does not believe it to be true [intentional misrepresentation of fact]; **2)** The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true [negligent misrepresentation of fact]; **3)** The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact [concealment or suppression of fact]; or, **4)** A promise, made without any intention of performing it [promissory fraud].

**122.** California Civil Code section 1572, dealing specifically with fraud in the making of contracts, provides: "Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: **1)** The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; **2)** The positive assertion, in a manner not warranted by the information of the person making it, of

57